Tim Cook
**Cook & Associates**
3901 Taiga Drive
Anchorage, Alaska 99516
(907) 336-5291
tcook@acsalaska.com
For Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| JOHN IASELLA, for himself, and for others similarly situated. Plaintiffs,<br><br>vs.<br><br>Clint Miller, Defendant. | Case No.<br><br><br><br>**Case No.  __:00-cv-_____- _____** |

## CLASS ACTION COMPLAINT FOR

## DAMAGES and INJUNCTIVE RELIEF

### Alaska Unfair Trade and Consumer Protection Act (AS 45.50.471 *et Seq.*)

### Preliminary Statement

1.      Clint Miller is a registered hunting guide in the State of Alaska. He promises clients the hunt of a lifetime, and charges accordingly.  But, after his clients prepay his fee (typically $20,000 or more per person), Miller cancels the hunt, and refuses to refund any money to clients. As part of the ruse, Miller claims that some misfortune or calamity has occurred, and he cannot take clients on the hunt they have paid for. To mollify jilted clients,

Iasella, et al. v. Miller
Case No. :
Case 3:25-cv-00032-HRH    Document 1    Filed 02/11/25    Page 1 of 24

Miller expresses his deepest regrets, apologizes, plays on their sympathies, and offers to reschedule their hunt until the following year. For those clients who opt to reschedule, the rescheduled hunt never actually occurs. For those clients who demand a refund of their prepaid fee, Miller stops all communication, and does not refund the fee. Miller's scheme of promising hunts, taking prepayment of the fee, and failing to provide any hunt at all, is not an isolated event. This scheme has occurred over several years and to many clients. Because Miller's scheme goes back to at least 2021, it is believed that the putative class may be 60 people or more.

Clint Miller should be held financially accountable for his deceptive and fraudulent behavior by imposing statutory treble damages under the Alaska Unfair Trade Practices and Consumer Protection Act. And, perhaps more important from a societal perspective, Miller should be forever prevented from perpetrating this fraudulent scheme by permanently enjoining Miller from ever again acting as a commercial hunting guide in the State of Alaska.

**JURISDICTION and VENUE**

2.      Plaintiff, on behalf of all persons similarly situated, alleges that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), as the putative class members share common questions of law and fact arising from Defendant's actions making a class action the superior method for resolving these claims due to the numerous individuals affected and the predominance of common issues over individual questions. This Court has jurisdiction because the claims in controversy are more than $100,000.

Iasella, et al. v. Miller
Case No. :
Case 3:25-cv-00032-HRH    Document 1    Filed 02/11/25    Page 2 of 24

3.      Venue is appropriate under as the claims arose within the State of Alaska, and the Defendant resides in Wasilla, Alaska.


**PARTIES**

4.      Plaintiff for the putative Class Action Complaint is John Iasella. He is a resident of the State of Washington. On information and belief, there is diversity of citizenship of all putative class members and the Defendant.

5.      Plaintiff is informed, and believes, and thereupon alleges that Defendant, Clint Z. Miller, (hereinafter "Defendant Miller") at all times relevant, is and was, a registered Alaska hunting guide. Defendant Miller's registered guide license is GUIR 1352. Miller is engaged in commerce within the State of Alaska as he does regular and substantial business as a paid commercial hunting guide in the State of Alaska.


**GENERAL ALLEGATIONS**

6.      Defendant, Clint Miller is a licensed Hunting Guide in the State of Alaska. His Guide license number is GUIR 1352.

7.      Defendant Miller is paid by his clients to provide them with hunting guide services in the State of Alaska. As such, Defendant Miller is engaged in commerce within the State of Alaska.

8.      Defendant Miller, as a standard business practice, requires a prepaid fee from those people who engage him to provide them with Hunting Guide services.

9.      Defendant Miller utilizes the services of "hunt brokers" who connect people who are seeking hunting guide services with  hunting guides. One such broker is Jim Riley, dba Riley Outdoor Consulting LLC. (hereafter Riley).

Iasella, et al. v. Miller
Case No. .
Case 3:25-cv-00032-HRH    Document 1    Filed 02/11/25    Page 3 of 24
Page 3 of 24

10.     Plaintiff John Iasella, (hereafter Iasella) was seeking to go on a guided hunting trip in Alaska and contacted Riley in 2023. Riley recommended Defendant Miller to Iasella. *See* Ex. 1, *Aff. of John Iasella (Iasella Aff.)* ¶4.

11.     On January 16, 2023, Iasella notified Riley that he agreed to use Defendant Miller to act as his hunting guide and provider for an Alaska Big Game Hunting Trip (hereafter: "Guided Hunting Trip"). Riley, acting as an agent for Defendant Miller, accepted Iasella's first payment of $5,000. *Ibid.* ¶5.

12.     Riley, acting as an agent for Defendant Miller, informed Iasella that Defendant Miller would, within 90 days (i.e. by April 15, 2024) provide Iasella with a "Hunt Contract". *Ibid..* ¶7.

13.     Defendant Miller did not provide Iasella with the "Hunt Contract" (hereafter: "Iasella Hunt Contract"), until on or about July 31, 2024. *Ibid.,* and *See* Ex. 2. *Iasella Hunt Contract.*

14.     Under the terms of the "Iasella Hunt Contract", Iasella prepaid Defendant Miller a total of $20,000 as required in the "Iasella Hunt Contract". Ex. 2. *Iasella Hunt Contract*; and Ex. 1, *Iasella Aff.* ¶6.

15.     The "Hunt Contract" had a section entitled "Hunt cancelation, delay and postponement deposit refund policy:" Ex. 2. *Iasella Hunt Contract* at p. 2.

16.      Under the "Hunt cancelation, delay and postponement deposit refund policy:" the only basis for forfeiture of the prepaid fees was " If the hunter cancels the hunt…" *Ibid.*

17.     At 4:01 a.m. (times are PST) on September 2, 2024, as Iasella and his hunting companion Phillip Jones were preparing to fly to Anchorage to begin their "Guided Hunting Trip" Defendant Miller sent Iasella a text message conditionally cancelling the "Guided

Iasella, et al. v. Miller
Case No. :
Case 3:25-cv-00032-HRH     Document 1     Filed 02/11/25     Page 4 of 24
Page 4 of 24

Hunting Trip". Defendant Miller text stated: "I'm going to have to post pone (*sic*) your guys hunt possibly… Give me till (*sic*) this afternoon to see if I can replace guides." *See* Ex. 3, *Iasella Texts* at p. 1.

18.     In his next text message, (9:04 a.m. on September 2, 2024) Defendant Miller confirmed the "Guided Hunting Trip" was cancelled. Defendant Miller stated: "Doesn't Look (*sic*) like I will be able to….doesn't look like I can rite (*sic*) now. Had a really misfortune (*sic*) deal happen with guides two of them*". Ibid.*at p. 2.

19.     In his final text to Iasella (3:54 p.m. September 3, 2024) Defendant Miller stated: "I'll call you when we get camp set up with starlink." *Ibid.*at p. 3. Defendant Miller has not called (nor texted) Iasella since sending this text. Ex. 1, *Iasella Aff.* ¶11.

20.     Iasella requested Defendant Miller to refund the prepaid fee that Iasella had paid Defendant Miller for the "Guided Hunting Trip". *Ibid.* at ¶13.

21.     Although Iasella requested a refund of his prepaid fee, Defendant Miller has not refunded any money to Iasella. *Ibid.* at ¶¶13 & 14.

22.     Defendant Miller made false statements, deceptions, and misrepresentations to Iasella from the very beginning. These falsities and misrepresentations include:

    a.   The "Hunt Contract" was deceptive in that the section entitled ""Hunt cancelation, delay and postponement deposit refund policy:" implies that there is a refund policy, when in fact Defendant Miller has not made any refund to Iasella;

    b.   Defendant Miller falsely represented to Iasella that Defendant Miller would provide a "Guided Hunting Trip" when in fact Defendant Miller either did not

Iasella, et al. v. Miller
Case No. :
Case 3:25-cv-00032-HRH     Document 1     Filed 02/11/25     Page 5 of 24

intend to provide the services and/or did not have the capacity to provide services;

c. Defendant Miller falsely represented to Iasella the reason why the "Guided Hunting Trip" was canceled;

d. Defendant Miller falsely implied that he had assistant guides for the "Guided Hunting Trip";

e. Defendant Miller falsely claimed that some sort of calamity or misfortune befell his assistant guides;

f. Defendant Miller falsely claimed he was attempting to replace his assistant guides;

g. Defendant Miller falsely implied that he would be setting up camp;

h. Defendant Miller falsely implied that he would be setting up a starlink system of communication; and

i. Defendant Miller lied to Iasella when he stated, "I'll call you…" and then never did so.

23. On December 23, 2024, in compliance with AS 45.50.535(b)(1) a "cease and desist letter" was sent to Defendant Miller, demanding that he "cease offering [his] services as a hunting guide in the State of Alaska; cease requiring or accepting prepaid fees for [his] services as a hunting guide in the State of Alaska; and to immediately return the prepaid fees that [were] paid to [him]."

24. Iasella asserts the actual damages he incurred as a result of Defendant Miller's false statements, misrepresentations and deceptions is in excess of $35,000. Ex. 1, *Iasella Aff.* ¶17.

Iasella, et al. v. Miller
Case No. :
Case 3:25-cv-00032-HRH    Document 1    Filed 02/11/25    Page 6 of 24
Page 6 of 24

**Practice of Defendant Cancelling Hunts and Improperly Retaining Fees**

25.     After Defendant Miller canceled Iasella's "Guided Hunting Trip" and stopped communicating with Iasella, Iasella began researching Defendant Miller. Iasella found that Defendant Miller had a pattern and practice of agreeing to provide people with hunting guide services, requiring prepayment of his fees, cancelling the hunt by claiming some calamity or catastrophe had occurred, and then failing to make refunds to his jilted clients.  Iasella found this occurred with numerous hunters over multiple years. *Ibid.* ¶15. Among those jilted clients are:

**Donald Lauscher**

26.     Donald Lauscher (Lauscher) is a retired factory worker. He is a resident of Cornell, Michigan.  One of his lifelong dreams was to go on a big game hunt in Alaska. He saved for years to be able to afford the Alaska big game hunt he hoped for. Ex. 4, See *Aff. of Donald Lauscher* (*Laucher Aff.*) ¶¶ 2& 3.

27.     In 2020, Lauscher determined to make his dream come true, and contacted Clint Miller. *Ibid.* ¶4.

28.     Defendant Miller forwarded a Hunt Contract, dated December 15, 2020, to Lauscher (hereafter: "Lauscher 2021 Hunt Contract"). On February 10, 2021, Lauscher executed the "Lauscher 2021 Hunt Contract" and returned it to Defendant Miller. Ex. 5, *Lauscher Hunt Contracts* at p. 1-2.

29.     The "Lauscher 2021 Hunt Contract" was for Defendant Miller to act as Lauschers' Alaska Hunting guide and for the provision of a ten-day Alaska big game hunting trip for Lauscher and his son in September 2021 (hereafter: "Lauscher Hunting Trip 2021").

Iasella, et al. v. Miller
Case No. :
Case 3:25-cv-00032-HRH   Document 1   Filed 02/11/25   Page 7 of 24
Page 7 of 24

30. Defendant Miller's fee for providing the "Lauscher Hunting Trip 2021" was $19,500, plus an additional $5,500 for a bear hunt add on, for a total of $24,500. Lauscher prepaid the entire fee as required. Ex. 5, *Lauscher Hunt Contracts* at p. 1-2; and Ex. 4 *Lauscher Aff.* ¶6.

31. The "2021 Lauscher Hunt Contract" had a section entitled "Hunt cancelation, delay and postponement deposit refund policy:" Ex. 5, *Lauscher 2021 Hunt Contract* at p. 2.

32. Under the "Hunt cancelation, delay and postponement deposit refund policy:" of the "2021 Laucher Hunt Contract" (and all subsequent contracts) the only basis for forfeiture of the prepaid fees was "If the hunter cancels the hunt…" *Ibid.*

33. On September 2, 2021, while preparing to travel to Alaska, Lauscher received a text from Defendant Miller stating that the Defendant Miller was canceling the "Lauscher Hunting Trip 2021". Defendant Miller claimed the reason for the cancelation was Covid. Ex. 4, *Lauscher Aff.* ¶ 8.

34. After Defendant Miller canceled the "Lauscher Hunting Trip 2021", he told Lauscher he could reschedule the hunt until 2022. Lauscher acceded to reschedule the hunt until 2022. (Hereafter "Lauscher Hunting Trip 2022") *Ibid.* ¶¶ 9 & 10.

35. Again, just as Lauscher was preparing to leave for the "Lauscher Hunting Trip 2022", Defendant Miller texted Lauscher claiming that he (Defendant Miller) had injured his leg and that he was going to the hospital for X-rays and possibly surgery. *Ibid.* ¶ 11. The next day Defendant Miller texted Lauscher canceling the 2022 and telling Lauscher they needed to reschedule the hunt to 2023. *Ibid.* ¶ 12.

36.     Shortly after Defendant Miller texted Laucher to cancel the "Lauscher Hunting Trip 2022", Lauscher texted Defendant Miller to ask if it was possible to hire another guide in order to hunt that season. Defendant Miller told him there was none. *Ibid.* ¶ 13.

37.     In late 2022 Defendant Miller and Lauscher had a telephone conversation. During that conversation Lauscher bared his soul to Defendant Miller regarding how disappointed he was and pleaded for Defendant Miller to refund his money. Defendant Miller was adamant about taking Lauscher hunting in 2023, and would not discuss refunding any money.  Lauscher felt he really had no choice but to accept this false promise that Defendant Miller would provide a guided hunt in 2023 (hereafter" "Lauscher Hunt 2023"). *Ibid.* ¶ 14.

38.     Reluctantly, Lauscher agreed to again reschedule the hunting trip until 2023. But yet again, just as Lauscher was preparing to leave for Alaska, Defendant Miller cancelled the hunt. This time Defendant Miller claimed that weather forced him to cancel the "Lauscher Hunt 2023". *Ibid.* ¶¶ 15-19.

39.     After the "Lauscher Hunt 2023" was canceled, Lauscher asked for a refund. However Defendant Miller begged and pleaded for Lauscher to give him one last chance "to make it right".  At this point, Lauscher was certain that he would not receive a refund, so in desperation he agreed to reschedule the hunt to 2024 (hereafter: "Lauscher Hunt 2024"). *Ibid.* ¶¶ 20 & 21.

40.     And yet again, on September 12, 2024, just as Lauscher was preparing to leave for the airport, Defendant Miller cancelled the hunt. This time Defendant Miller claimed there was a fuel shortage and therefore the "Lauscher Hunt 2024" had to be canceled. *Ibid.* ¶ 22.

41.     After Defendant Miller cancelled the "Lauscher Hunt 2024", Lauscher left phone messages and texts demanding that Defendant Miller refund Lauscher's money. The

deadline Laucher set to refund his money was October 31, 2024. When Lauscher demanded that Defendant Miller refund his money, Defendant Miller stopped all communication with Lauscher. *Ibid.* ¶ 23.

42. Defendant Miller has not refunded any fees to Lauscher.

43. Defendant Miller made false statements and misrepresentations to Lauscher from the very beginning of their relationship. These falsities and misrepresentations include:

    a. Defendant Miller falsely represented to Lauscher that Defendant Miller would provide hunting guide services to Lauscher, when in fact, Defendant Miller either did not intend to provide guide services and/or did not have the capacity to provide guide services;

    b. The "2021 Lauscher Hunt Contract" (and every subsequent version) was deceptive in that the section entitled "Hunt cancelation, delay and postponement deposit refund policy:" implies that there is a refund policy, when in fact Defendant Miller never intended to refund Lauscher's prepaid deposit;

    c. Defendant Miller falsely represented to Lauscher the reason for cancelling and/or postponing the 2021 hunt;

    d. Defendant Miller falsely represented to Lauscher the reason for cancelling and/or postponing the 2022 hunt;

    e. Defendant Miller falsely represented to Lauscher the reason for cancelling and/or postponing the 2023 hunt;

    f. Defendant Miller falsely represented to Lauscher the reason for cancelling and/or postponing the 2024 hunt.

Iasella, et al. v. Miller
Case No. :
Case 3:25-cv-00032-HRH    Document 1    Filed 02/11/25    Page 10 of 24

44. Lauscher asserts the actual damages he incurred as a result of Defendant Miller's false statements, misrepresentations and deceptions is in excess of $35,000.

**John Sherman**

45. John Sherman is a resident of Roswell, New Mexico. Ex. 6. *Aff. of John Sherman*, ¶1.

46. On January 10, 2023, Sherman signed an agreement with Riley Outdoor Consulting LLC, as an agent for Defendant Miller, to use Defendant Clint Miller as his guide for a 10-day big game hunt in Alaska. Ex. 6, Aff. of John Sherman ¶ 5.

47. Defendant Miller was to provide Sherman with a "Hunt Contract" (hereafter "Sherman Hunt Contact") within 90 days of the agreement made through Riley. Defendant Miller did not provide Sherman with the "Sherman Hunt Contract" until August 4, 2024., Ex.6, *Sheman Aff.* ¶ 7.

48. The "Sherman Hunt Contract" specified that Defendant Miller was to act as his guide for a big game hunt in Alaska for 10 days of hunting beginning September 5, 2024. Ex. 7, *Sherman Hunt Contract*, p. 1.

49. Defendant Miller's fee for providing guide services to Sherman was $ 24,500, which Sherman prepaid in its entirety. Ex. 7, *Sherman Hunt Contract*, p.1; and *Sherman Aff.* ¶6.

50. The "Sherman Hunt Contract" had a section entitled "Hunt cancelation, delay and postponement deposit refund policy:" Ex. 7, Ex. 7, *Sherman Hunt Contract*, p.2.

Iasella, et al. v. Miller
Case No. :
Case 3:25-cv-00032-HRH    Document 1    Filed 02/11/25    Page 11 of 24

51.     Under the "Hunt cancelation, delay and postponement deposit refund policy:" of the "Sherman Hunt Contract" the only basis for forfeiture of the deposit was "If the hunter cancels the hunt…"

52.     On September 13, 2024, Sherman flew from Albuquerque, New Mexico to Anchorage. He was scheduled to fly from Anchorage to Holy Cross the next morning where Defendant Miller was to pick him up. Sherman Aff. ¶ 9.

53.     On Saturday September 14, 2024 Sherman texted Defendant Miller that he was in Anchorage and would be flying into Holy Cross the following morning. At 2:54 a.m. Defendant Miller's reply was "Sherman don't play games please.  You know I had to pull camp." Ex. 8, *Sherman Text Compilation* at p. 1.

54.     Sherman had no idea what Defendant Miller was talking about, and asked if Defendant Miller was "joking". Defendant Miller replied; "Sherman don't play games please. You know I had to pull camp." And then a single word text: "Stop!"  *Ibid.* at p. 1 & 2.

55.     On September 15, 2024, Defendant Miller sent a long and rambling "woe is me" text to Sherman. Defendant Miller claimed the village had stopped selling fuel, that Defendant Miller was so "very very stressed out about it to the point of health concerns for me"; and invoking his religion by "praying god leads me in the correct direction …" *Ibid.* at p. 3 & 4.

56.     When Sherman requested a refund, the "direction" that Defendant Miller took was to stiff Sherman. Since the date on which Sherman requested a refund (September 15, 2024) there has been no further communication from Defendant Miller. Nor has Sherman received a refund from Defendant Miller. Ex. 7. *Sherman Aff.* ¶ 13.

Iasella, et al. v. Miller
Case No. :
Case 3:25-cv-00032-HRH     Document 1     Filed 02/11/25     Page 12 of 24

57.     Defendant Miller made false statements and misrepresentations to Sherman both to induce him into engaging Defendant Miller to provide hunting guide services, as well as falsities and misrepresentations regarding the scheduled hunting trip. Among those misrepresentations, falsehoods, and deceptions are the following:

a.  Defendant Miller falsely represented to Sherman that Defendant Miller would provide hunting guide services to Sherman when in fact Defendant Miller either did not intend to provide guide services and/or did not have the capacity to provide guide services;

b.  The "Hunt Contract" was deceptive in that the section entitled "Hunt cancelation, delay and postponement deposit refund policy:" implies that there is a refund policy, when in fact Defendant Miller never intended to refund Sherman's prepaid deposit;

c.  Defendant Miller attempted to deceive Sherman by suggesting that Defendant Miller had previously communicated to Sherman that the hunt was canceled, and somehow Sherman should be ashamed that he was "playing games" with his texts;

d.  Defendant Miller falsely represented to Sherman why Defendant Miller was cancelling the hunt;

e.  Defendant Miller falsely implied that he had set up a camp, and then had to pull camp;

f.  Defendant Miller mislead Sherman by saying the village "stopped selling fuel", when in fact, the village was still selling fuel;

g.  In an attempt to engender sympathy from Sherman, Defendant Miller misled Sherman with false and exaggerated claims of health concerns;

h.  In an attempt to engender sympathy from Sherman, Defendant Miller misled Sherman with false and exaggerated claims of faith and seeking God's direction on what to do.

58.  Sherman asserts the actual damages he incurred as a result of Defendant Miller's false statements, misrepresentations and deceptions is in excess of $35,000.

**Richard Jordan**

59.  Richard Jordan is a resident of the State of Idaho. Ex. 9, *Affidavit of Richard Jordan,* (*Jordan Aff.*), ¶ 1.

60.  On January 8, 2023 Jordan executed an agreement through Defendant Miller's agent, Jim Riley, of Riley Outdoor Consulting LLC, for the provision of an Alaska Big Game hunting trip and for Defendant Miller to be the Hunting Guide (hereafter: "Jordan Guided Hunting Trip"). The "Jordan Guided Hunting Trip" was scheduled to occur from September 14, 2024 through September 26, 2024. *Ibid.* ¶ 4, and *See,* Ex. 10, *Jordan Hunt Contract.*

61.  Jordan prepaid a total of $24,500 to Defendant Miller for provisioning and to act as the Hunting Guide for the "Jordan Hunting Trip." Ex. 9 *Jordan Aff.* ¶ 5; and Ex. 10, *Jordan Hunt Contract* at p. 1.

62.  In the Spring of 2024 Jordan heard that Defendant had cancelled hunting trips in the previous year and called Riley. Riley assured Jordan that the only issue that he knew of was that the camp accommodations and food were not the best. *Ibid.* ¶6.

63. In July 2024, Jordan was contacted by federal agent Brandon Bosch who made inquiries about Defendant Miller. Jordan then learned that he should have been provided a "Hunt Contract" within 90 days of executing the agreement with Riley for the "Jordan Hunting Trip." *Ibid.* ¶¶ 7 & 8.

64. After speaking to federal agent Bosch, Jordan had a telephone conversation with Defendant Miller regarding why Bosch was seeking information. As part of that conversation, Defendant Miller conveyed to Jordan that Bosch had also spoken to some of Defendant Miller's other clients. Defendant Miller said that some of those clients were considering cancelling their trip. More important, Defendant Miller told Jordan that there would be no refund if a client cancelled. *Ibid. ¶9.*

65. On or about September 5, 2024, Jordan received a call from Plaintiff John Iasella. Iasella told Jordan that Defendant Miller had just cancelled Iasella's hunt. Ex. 9, *Jordan Aff. ¶10.* Jordan contacted Defendant Miller to determine if everything was still on track for his (Jordan's) hunt. Defendant Miller told Jordan that his hunt was still on track, but that he (Defendant Miller) had to cancel Iasella's hunt because an assistant guide had broken his arm, and Miller had to go rescue him. *Ibid.*

66. Among the texts that Defendant Miller sent to Jordan are the following:

   a. July 25, 2024: His other clients would be "really sad if they decide not to come"; Ex. 11, *Jordan Text Compilation*, at p.1;

   b. September 3, 2024: " Just so you know also the four guys that are going in the attorney deal with the Isala (*sic*) group never payed (*sic)* the other 50%"; *Ibid* at p. 2.

   c. September 3, 2024: "…we are up and running for big bulls". *Ibid.* at p. 3.

Iasella, et al. v. Miller
Case No.:
Case 3:25-cv-00032-HRH    Document 1    Filed 02/11/25    Page 15 of 24

     d.  September 3, 2024: "I'll send you pictures once I get the starlink up in couple days". *Ibid.*

67.    On or about September 10, 2024, Jordan called Miller to verify that his hunt was still on track to occur. Miller assured Jordan that everything was on track. Ex. 9, *Jordan Aff.* ¶11.

68.    On September 11, 2024 Jordan texted Defendant Miller and stated: "Clint I'm hearing all kinds of crazy stuff right now need to hear from you this hunt is still a go". *Ibid.* at p. 4. When Defendant Miller responds, it is with a long rambling narrative "woe is me" text, and a promise that "I'll contact you here if not this evening by tomorrow for sure." Ibid. at p. 4-5.

69.    On September 12, 2024, the day before Jordan was scheduled to leave for the airport to travel to Alaska, Defendant Miller canceled the hunt in a long rambling text. *Ibid. at p. 6-8.* Among the false claims Defendant Miller made in these texts are:

     a.  "The village in Shagluk (sic) stopped selling fuel to moose hunters";

     b.  That Defendant Miller has "Got camp in…" and he has made "sure this camp is ready and run good…";

     c.  That Defendant Miller "tried contacting air services to have [gasoline] flown in";

     d.  That someone, ostensibly law enforcement, is "watching me very carefully fpr (*sic*) transitioning through in state water of the refuge";

     e.  "I promise you of all the people I will make it rite (*sic*) with you."; and

     f.  "I will call you soon".

70.     Since receiving the text message cancelling the hunt and promising to make it "rite" (*sic*), defendant Miller has not had any further communication with Jordan.

71.     Defendant Miller made false statements and misrepresentations to Jordan both to induce him into engaging Defendant Miller to provide hunting guide services, as well as falsities and misrepresentations regarding the scheduled hunting trip. Among those misrepresentations, falsehoods, and deceptions are the following:

a.  Defendant Miller falsely represented to Jordan that Defendant Miller would provide hunting guide services to Jordan when in fact Defendant Miller either did not intend to provide guide services and/or did not have the capacity to provide guide services;

b.  The "Hunt Contract" was deceptive in that the section entitled "Hunt cancelation, delay and postponement deposit refund policy:" implies that there is a refund policy, when in fact Defendant Miller never intended to refund Jordan's prepaid fees;

c.  When Defendant Miller told Jordan that other clients who cancelled their hunt would not be refunded, he falsely implied that refunds would be made if the hunt were canceled for other reasons;

d.  Defendant Miller misled Jordan by saying the village of Shageluk had "stopped selling fuel to moose hunters;", when in fact, the village was still selling fuel, albeit it may have stopped selling fuel to those who did not pay their bills;

e.  Defendant Miller falsely implied that he had made sure that the camp was "ready and run good", when in fact it was not ready, and it was not "run good";

Iasella, et al. v. Miller
Case No. :
Case 3:25-cv-00032-HRH   Document 1   Filed 02/11/25   Page 17 of 24

f.  In an attempt to engender sympathy from Jordan, Defendant Miller misled Jordan with false and exaggerated claims of health concerns;

g.  Defendant Miller misled Jordan with claims that he (Defendant Miller) was being watched carefully by law enforcement;

h.  Defendant Miller deceived Jordan with promises to "call you soon" and that Defendant Miller would "make it rite (*sic*)".

72.  Jordan asserts the actual damages he incurred as a result of Defendant Miller's false statements, misrepresentations and deceptions is in excess of $35,000.

## CLASS DEFINITION

73.  The Class consists of all persons, who entered into a contract with Defendant Clint Miller to act as a Hunting Guide in the State of Alaska at any time within the preceding 2 years from the filing of this Complaint, and continuing through the present, and who were not provided the guide service, and were not refunded the fees they paid to Defendant Miller.

74.  Beginning in 2023 and continuing into 2024, Plaintiff John Iasella transferred to Defendant Miller a total of $20,000 as prepayment for Hunting Guide service. Miller canceled the hunt, has refused to return any of the money plaintiff Iasella paid to Defendant Miller. Therefore, Plaintiff was, and is, within the Class as defined in paragraph 73.

## CLASS ALLEGATIONS

75.  This action is brought and may be properly maintained as a class pursuant to Federal Civil Rule 23 and satisfies the requirements thereof.

Iasella, et al. v. Miller
Case No.:
Case 3:25-cv-00032-HRH   Document 1   Filed 02/11/25   Page 18 of 24

76.     While the exact number of Class members is unknown to Plaintiff at this time, and can only be determined through discovery, membership in the Class is ascertainable based on the records maintained by Defendant, and by the State of Alaska. Plaintiff is informed and believes that the Class likely includes more than forty members. Therefore, the members of the Class are sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Civil Rule 23(a)(1).

77.     Common questions of law and fact exist as to members of the Class, as required by Federal Civil Rule 23(a)(2). The common questions include, but are not limited to, whether it is a violation of the Alaska Unfair Trade and Consumer Protection Act AS 45.50.471 *et seq.* for Defendant Miller to:

   a.   Enter into an agreement with clients to provide Hunting Guide services, when Defendant Miller either does not intend and/or does not have the capacity to provide guide services;

   b.   Fail to provide a "Hunting Contract" to clients in a timely manner;

   c.   To incorporate a "Refund policy" in the contract terms, and then utterly fail to follow those terms;

   d.   Mislead, misrepresent, deceive, and lie to clients about materially important aspects of the hunt, including but not limited to: i.) communications; ii.) logistics; iii.) personnel; iv.) weather conditions; v.) health concerns; vi.) illness; vii.) injuries and, viii.) other concerns that may affect the ability to provide services;

   e.   Mislead, misrepresent, deceive, and lie to clients regarding the reason why a hunt is cancelled;

f.   Refuse to communicate with clients regarding a refund of prepaid fees when Defendant Miller cancels a hunt; and

g.   Refuse to refund clients' prepaid fees when Defendant Miller cancels a hunt.

78.    The claims of Plaintiff are typical of the claims of the Class which he seeks to represent. Plaintiff and each member of the Class have been subjected to the same improper practices and have been damaged in the same manner.

79.    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff does not have any interests which are antagonistic to the Class. Moreover, Counsel for Plaintiff is experienced in consumer protection law and qualified to conduct class action litigation.

80.    This class action is certifiable under Federal Civil Rule 23(b)(3) because the common questions framed above predominate over any questions which affect individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of the claims asserted in this action because of the following reasons:

a.   The expense and burden of individual litigation make it economically unfeasible for class members to seek redress other than through the procedure of a class action;

b.   If separate actions were brought by individual Class members, the resulting duplicity of lawsuits would cause undue hardship and expense to the Court and the litigants by necessitating multiple trials of similar factual and legal issues; and,

Iasella, et al. v. Miller
Case No. :
Case 3:25-cv-00032-HRH    Document 1    Filed 02/11/25    Page 20 of 24
Page 20 of 24

c.      Absent a class action, Defendant Miller will likely retain the benefits of their wrongdoing, and there would be a failure of justice.

81.      In the alternative, this action is certifiable as a class action under Federal Civil Rule 23(b)(1) and/or (b)(2) because:

     a.      The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendant;

     b.      The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of the other Class members not party to the adjudication, or substantially impair or impede their ability to protect their interests; and

     c.      Defendant Miller has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to the Class members on a mandatory Class-wide basis.

82.      Plaintiff is aware of no difficulty likely to be encountered in the management of this litigation that should preclude its maintenance as a class action.

Iasella, et al. v. Miller
Case No. :
Case 3:25-cv-00032-HRH     Document 1     Filed 02/11/25     Page 21 of 24

**FIRST CLAIM FOR RELIEF—VIOLATION OF ALASKA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (AS 45.50.471)**

83. Plaintiff incorporates by reference all facts and allegations set forth in the preceding paragraphs of this complaint.

84. Defendant is, and was, engaged in trade or commerce within the State of Alaska.

85. In the course of transactions with Plaintiff and the Class members, Defendant Miller engaged in conduct prohibited by Alaska's Unfair Trade Practices and Consumer Protection Act ("UTPA") by:  i.) Defendant offering, and agreeing to provide Hunting Guide services, requiring the client to prepay his fees, then refusing to refund the fees when defendant canceled the agreed to hunt; ii.) Defendant misrepresented to clients that he would provide hunting guide services to them, when in fact he did not provide those services; iii.) Defendant misrepresented to his clients the reason that a hunt was cancelled; iv.) Defendant misrepresented material important facts to his clients regarding their hunt(s); v.)  Defendant misrepresented to clients that he would provide them hunting guide services in the future and/or other inducements when he canceled their hunt.

86. Defendant's misrepresentations to plaintiff and class members regarding the provision of Hunting Guide services was deceptive.

87. Defendant's misrepresentations to plaintiff and class members regarding the refunding of client's prepaid fees was deceptive and fraudulent;

88. Defendant Miller's "Hunt Contract", particularly the "refund policy" was deceptive and untrue;

89.  Defendant Miller's explanations to clients regarding the reason for canceling a hunt were false and untrue;

90. Defendant Miller's promises to "make it "rite" (*sic*) were false and untrue;

*91.* The above-described conduct is "deceptive" and/or "unfair" and therefore violated Alaska Unfair Trade and Consumer Protection Act AS 45.50. 71 I *et seq.*

92. As a result of Defendant's violations of the Alaska Unfair Trade and Consumer Protection Act AS 45.50. 71  *et seq*, Plaintiff and the Class Members have suffered an ascertainable loss of money or property.

93.  As a result of Defendant's violations of the Alaska Unfair Trade and Consumer Protection Act AS 45.50. 71 I *et seq*, Plaintiff and the Class members are entitled to statutory damages in an amount of three times their actual damages, or $500 per violation, whichever is greater.

94.  As a result of Defendant's violations of the Alaska Unfair Trade and Consumer Protection Act AS 45.50. 71 *et. seq*, Plaintiff is entitled to an award of full reasonable attorney fees and costs as provided in AS 45.50.537(a).


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

      (1) Certification of the above-defined Class;

      (2) A finding that Plaintiff, and each Class Member sustained actual damages of at least $35,000, or as the court deems appropriate;

      (3) An award of statutory damages to Plaintiff and for each Class Member in the amount of three times their actual damages, or $500, whichever is greater, pursuant to AS 45.50.531;

Iasella, et al. v. Miller
Case No. :
Case 3:25-cv-00032-HRH    Document 1    Filed 02/11/25    Page 23 of 24

(4) A permanent injunction prohibiting Defendant from acting as a licensed Hunting Guide in the State of Alaska;

(5) A permanent injunction prohibiting Defendant from accepting any monetary payment for any type of guided hunting service in the State of Alaska.

(6) For equitable relief including, but not limited to, disgorgement of any unrefunded deposits for cancelled hunts;

(7) For full attorney's fees and costs of suit incurred herein as provided by AS 45.50.537 or other statutory provisions;

(8) For such other and further relief as the court deems just and proper under the circumstances.

DATED: February 10, 2025       COOK AND ASSOCIATES
Attorneys for the Plaintiffs

*s/ Tim Cook*

Tim Cook, AK Bar No. 9007048